# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
*ex rel.* WADE RINER,

                    Plaintiff,

v.

WATERCOLOR COMMUNITY
ASSOCATION, INC., *et al.*,

                    Defendants.

Civil Action No.: 3:22-CV-11072-TKW/HTC

## MOTION TO DISMISS COMPLAINT [DE 1] BY DEFENDANT ROSEMARY BEACH PROPERTY OWNERS ASSOCIATION, INC.

Defendant, Rosemary Beach Property Owners Association, Inc. (**Rosemary Beach**), moves to dismiss the claims made by Wade Riner (**Riner**) under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (**FCA**).[1] Rosemary Beach is one of seventy-nine (79) defendants sued by Riner with an identical allegation: Riner contends all were ineligible for benefits under the Paycheck Protection Program, enacted by Congress in response to the COVID-19 crisis.[2]

---

[1] Mr. Riner brings this action *ex rel*. United States of America (the **Government**) which declined to intervene. The only allegations specific to Rosemary Beach are at Paragraphs 20, 56, and 65.

[2] Riner has sued eleven (11) defendants in this lawsuit. Riner has at least two related, pending lawsuits making the same FCA claims of PPP ineligibility: *U.S. ex rel. Riner v. Hunters Run Property Owners Ass'n, Inc., et al.*, Case No. 1:22-cv-23342-KMW (S.D. Fla.) (43 defendants); *U.S. ex rel. Riner v. Beaver Run Homeowners Association*, Case No. 1:22-cv-02071 (D. Co.) (25 defendants).

The number of defendants (79) sued by Riner underscores a dispositive obstacle – Riner's allegations, including those against Rosemary Beach, are based on information published on government and news media websites. Riner is a stranger to Rosemary Beach; in no way is he an "original source" for these FCA claims. As such, the FCA "public disclosure bar" warrants dismissal. 31 U.S.C. § 3730(e)(4)(A)–(B); *See, e.g.*, *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015) (affirming dismissal of FCA complaint and explaining three-part test for public disclosure bar); *United States ex rel. Smith v. Odom*, 2023 WL 5203000, *5 (N.D. Fla. 2023) ("a case must be dismissed where the claim is based on 'substantially the same' allegations or transactions that were previously publicly disclosed . . . in a federal report. . . . or in news media, unless the plaintiff was an 'original source' of the information").

In sum, Riner's allegations are substantially (indeed, entirely) based on public information, disclosed on government and news media websites, to which Riner contributes only his legal conclusions. Because Riner cannot plead or discover his way around the public disclosure bar (the existence of a government website and Riner's lack of connection to the defendant will not disappear), the *Complaint* should be dismissed <u>with</u> prejudice.

Independently, this Motion seeks a dismissal for Riner's failure to adequately allege the essential element of scienter.

## THE PAYCHECK PROTECTION PROGRAM

In March 2020, Congress enacted the ''Coronavirus Aid, Relief, and Economic Security Act'' (**CARES Act**).[3] The CARES Act was a response to the Covid-related economic shutdown. Additional legislation followed – Congress enacted "Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act" on December 27, 2020, and the "American Rescue Plan Act" on March 11, 2021.[4] One district court explained the intent of this legislation -- collectively the Paycheck Protection Program (**PPP**) -- as follows:

> . . . the policy choices made by Congress when it enacted both the first and second round PPPs are entirely rational and based on obvious, widely recognized historical economic facts. The first draw program was enacted as part of an urgent legislative attempt to cope with the devastating, unprecedented, and rapid economic decline that occurred when states around the nation slammed the brakes on normal economic output by drastically curtailing in-person work and personal movement for non-essential purposes. The resulting economic decline widely has been described as "the worst [economic] contraction in history". . .
>
> It was both consistent and entirely economically and politically rational for Congress to believe, first, that the broadest possible allowance of credit was called for in the opening weeks and months of the pandemic crisis, in order to keep as many citizens gainfully employed as possible . . .

*National Ass'n of Home Builders v. SBA*, 2021 WL 4458660, *11 (E.D. Mich 2023) (holding CARES Act preempted SBA ineligibility rules), *rev'd on grounds*

---

[3] Pub. L. No. 116-136, 134 Stat. 281 (2020);  15 U.S.C. § 636(a)(36).

[4] Pub. L. 116-260, 134 Stat. 1993 (the Economic Aid Act); Pub. L. No. 117-2, 135 Stat. 4 (American Rescue Plan).

*of mootness*, 2023 WL 192239 (6ᵗʰ Cir. 2023); *see also DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.,* 459 F. Supp. 3d 943, 957-958 (E.D. Mich. May 11, 2020), *aff'd* 960 F.3d 743, 746 (6th Cir. 2020) (same).[5]

In sum, Congress intended to help small businesses maintain employment by funding payrolls. To that end, the CARES Act expanded the eligibility for SBA loans by the "broadest possible allowance." *Id*. Title I of the CARES Act is titled the "*Keeping American Workers Paid and Employed Act*" and the substantive provision speaks directly to "increased eligibility" as follows:

> (D) INCREASED ELIGIBILITY FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS.— ''(i) IN GENERAL.— During the covered period, **in addition to small business concerns, any business concern**, **nonprofit organization**, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of . . . (I) 500 employees . . .

Pub. L. No. 116-136; 134 Stat. 281, 288; 15 U.S.C. § 636(a)(36) (Emphasis added). Of note, the CARES Act does not define the phrase "any business concern" to which the act extends eligibility. Examining the CARES Act, one

---

[5] "In response to the COVID-19 outbreak, Congress authorized historic levels of emergency funding for federal agencies to provide relief to individuals, businesses, state and local governments, and public services." Pandemic Response Accountability Committee, *Semiannual Report To Congress* (April 1, 2020 – September 30, 2020).

court explained that the word "any" carries "an expansive meaning . . . and implies *every* member of the class or group."[6]

## FACTUAL BACKGROUND

The relevant facts are drawn from the allegations of the *Complaint*, taken as true, and from publicly available government documents and news reports, the authenticity of which is not in dispute.[7]

### Government Reports & News Media

Through the CARES Act, Congress established the Pandemic Response Accountability Committee (**PRAC**) and tasked it with creating a public-facing website.[8] In its first report to Congress, PRAC explained:

Goal One: Promote Transparency

*Provide the Public with Timely Data and Information on Covered Funds and the Coronavirus Response*

In support of our first goal, we foster greater transparency of covered funds usage as well as the government's response to the COVID-19 or coronavirus pandemic. We pursue this goal via a robust, publicly-accessible website. We make available to the public details on the $2.6 trillion coronavirus relief funds, providing details on who received the funding, how much they received, and how programs and industries are spending the money.[9]

---

[6] *National Ass'n of Home Builders v. SBA*, 2021 WL 4458660, *10 (E.D. Mich 2023) (Emphasis in original).

[7] Concurrently with this *Motion To Dismiss*, Rosemary Beach will file its *Motion For Judicial Notice* providing the Court with government and news reports relevant to the public disclosure bar.

[8] 134 Stat. 496,533-334, 539-540 (formation of PRAC).

[9] Pandemic Response Accountability Committee, *Semiannual Report To Congress*, pg. 5 (April 1, 2020 – September 30, 2020).

The website (<pandemicoversight.gov>), which is regularly updated, provides detailed information on each recipient of PPP funds. The website is user-friendly and fully searchable. For example, searching for "Rosemary Beach" returns this result:

| Borrower | Loan amount | Amount forgiven | *Loan Status | Date approved | Date forgiven | Payroll | Rent | Utilities | Health Care | Mortgage Interest | Debt Interest | Refinancing EIDL | Not Provided | Lender name | Loan number | Business type |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROSEMARY BEACH PROPERTY OWNERS ASSOCIATION, INC. | $375,200 | $377,174 | Paid in Full | 2020-04-14 | 2020-11-03 | $375,200 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | Regions Bank | 7329837102 | Non-Profit Organization |

Here, the government website provides sixteen (16) fields of information, including the "loan amount," the "amount forgiven," the "lender name" and the "business type." This government disclosure indicates that Rosemary Beach is a non-profit organization that obtained one loan of $375,200, approved on April 14, 2020, that was later forgiven in full, and that loan was made through Regions Bank, an SBA approved financial intermediary.

Likewise, many news organizations re-published the same government data on their own websites, for example: Gannett -- The Ledger (Lakeland Florida),[10] the Northwest Florida Daily News,[11] NBC Miami,[12] and CNN.[13]

---

[10]   <https://data.theledger.com/paycheck-protection-program-loans/>
[11]   <https://www.nwfdailynews.com/story/news/2020/07/08/florida-ppp-loan-recipients-see-full-searchable-list-of-who-received-them/112604846/>
[12]   <https://www.nbcmiami.com/news/local/south-florida-small-businesses-pandemic-relief/2336990/>
[13]   <https://www.cnn.com/projects/ppp-business-loans/states/fl>

## The *Complaint*

The *Complaint* re-packages this publicly available information, adding only conclusory allegations of FCA liability. The lack of specific allegations is notable. Here are <u>all</u> of the allegations specific to Rosemary Beach:

- Paragraph 20 identifies Rosemary Beach as a non-profit organization located in Rosemary Beach, Florida.

- Next, Paragraph 56 is a chart with five information fields taken from the PRAC website (or a news media site), as follows:

| Defendant | # of Loans Rec'd | Loan(s) Amount | Date Loan(s) Approved | Loan Forgiven? | Amount of Loan Forgiven |
|---|---|---|---|---|---|
| Rosemary Beach Property Owners Association, Inc. | 1 | $375,200 | 04/14/2020 | Yes | $377,174 |

- Lastly, Paragraph 65 makes the conclusory allegation that Rosemary Beach "knowingly and falsely" certified its PPP eligibility, as follows:

65. Rosemary Beach applied for and received a PPP loan of $375,200, approved on April 14, 2020. In Rosemary Beach's application, Rosemary Beach knowingly and falsely certified that it was "eligible to receive a loan under the rules in effect at the time th[e] application is submitted." It also falsely certified that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Rosemary Beach already applied for forgiveness for its loan, and the United States forgave the loan in the amount of $377,174 (including interest).

A simple comparison shows that Riner's allegations are taken directly from the PRAC website, adding only Riner's legal views on PPP eligibility and FCA

liability. Scienter is an essential element of that liability. *See U.S. v. Supervalu, Inc.*, 143 S. Ct. 1391, 1396 (2023) (describing how FCA scienter must be proved). Notably, Riner can muster only, without elaboration, the bare allegation that Rosemary Beach "knowingly" submitted a false claim.

The key obstacle is the FCA "public disclosure bar." 31 U.S.C. § 3730(e)(4)(A)-(B). Riner has the burden to plead and prove that he is an "original source" of this publicly disclosed information.[14] Put differently, Riner must show that he has inside information about the defendants. The *Complaint*, however, has no relevant allegations specific to Rosemary Beach. Instead, Riner makes only the following general allegation for all defendants:

> **V.   ORIGINAL SOURCE AND DISCLOSURES**
>
> 25.   There are no bars to recovery under 31 U.S.C. § 3730(e). To the extent that any allegations or transactions herein have been publicly disclosed, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions and had provided that information to the United States prior to filing the complaint by serving a voluntary Pre-Filing Disclosure Statement.
>
> 26.   As required by 31 U.S.C. §§ 3730(b) and (e), Relator submitted and Original Disclosure Statement to the Attorney General of the United States and the United States Attorney for the Northern District of Florida, as well as all material evidence and information, prior to filing and serving this Original Complaint.

---

[14] *United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 640 (4th Cir. 2016) ("A relator bears the burden of proving that the public disclosure bar does not preclude his FCA action.").

This is conclusory and inadequate. Indeed, Riner's general allegation does not address all factors of the public disclosure bar, which are set forth in the Eleventh Circuit's three-part test (described in the Legal Argument that follows).

## Two FCA Counts

Riner has brought two FCA claims against Rosemary Beach and the other defendants. [DE 1]. Count I is based on the application for PPP benefits and Count II is based on the request to forgive those PPP loans. The same obstacles apply to both FCA counts.

## LEGAL ARGUMENT

This Motion seeks relief pursuant to Rule 12(b)(6) for Riner's "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain well-pled facts. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (U.S. 2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Also, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and raises "a right to relief above the speculative level." *Speaker v. U.S. Dep't. of Health & Human Servs*., 623 F.3d 1371, 1380 (11th Cir. 2020). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This Motion argues two bases for dismissal -- Riner's inability to allege facts: **(I)** that avoid the FCA public disclosure bar and **(II)** that show Rosemary Beach acted with the required scienter.

## I.   DISMISSAL IS WARRANTED UNDER THE FCA PUBLIC DISCLOSURE BAR.

The public disclosure bar is explicit in the FCA and mandates dismissal where a relator obtained the information through a prior public disclosure. Here is the relevant FCA language:

(A)   The court *shall* dismiss an action or claim under this section. . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . .

   (ii)   in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

   (iii)   from the news media,

unless . . . the person bringing the action is an original source of the information.

(B)   For purposes of this paragraph, "original source" means an individual who . . . (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(A)-(B) (Emphasis added).[15] This limitation prevents "opportunistic suits" by relators who, rather than being 'insiders', rely on information already publicly disclosed. *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012).

The Eleventh Circuit describes a three-part test. Courts must consider (1) whether the allegations made by the relator have been publicly disclosed; (2) if so, whether the allegations in the complaint are substantially the same as allegations or transactions contained in the public disclosures; and (3) if yes, whether the relator is an original source of that information. *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015) (citing *Cooper v. Blue Cross and Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 n.4 (11th Cir. 1994)). As noted, Riner has the burden of proving that his claims avoid the public disclosure bar. *See United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 640 (4th Cir. 2016).

### (A)   The *Complaint* Is Based On Publicly Disclosed Information.

The first prong is whether a complaint is based on information previously disclosed in "Federal reports" or "news media." 31 U.S.C. § 3730(e)(4)(A)(ii)-(iii). The prong is easily satisfied here. Congress formed the PRAC, within the Councils Of The Inspector General, and tasked the PRAC with creating a public-facing

---

[15] *See United States ex rel. Zafirov v. Florida Medical Associates LLC*, 2021 WL 443119, *6 (M.D. Fla. 2021) ("The False Claims Act requires a court to dismiss an action or claim if substantially the same allegations were publicly disclosed prior to the initiation of the *qui tam* action.").

website that provided the information now pasted into Riner's *Complaint*. Likewise, traditional news media republished the same information on their public outlets.[16]

**(B)    Riner's Allegations Are Substantially The Same As The Public Disclosures.**

The second prong is whether the allegations are "substantially the same" as the public disclosures. This consideration is a "quick trigger" to get to the more exacting original source inquiry. *Osheroff*, 776 F.3d at 814. "This prong is satisfied if the plaintiff bases her claim "*in any part* on . . . publicly disclosed information." *United States ex rel. Zafirov v. Florida Medical Associates LLC*, 2021 WL 443119, *7 (M.D. Fla. 2021) (Emphasis in original). *See also United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 934 (11th Cir 2016) ("We have explained that the language of the FCA 'is most naturally read to preclude suits based in *any part* on publicly disclosed information . . .'") (quoting *Cooper*, 19 F.3d at 567)).

---

[16] Not relevant here, but indicating the breadth of the public disclosure bar, courts have broadly construed "news media" to include non-traditional public sources. *See United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 2022 WL 573663, *6 (S.D. Fla. 2022) ("courts addressing the sweep of the term 'news media' typically have embraced the notion that 'the specified channels of public disclosure sufficient to trigger the jurisdictional bar should be construed broadly.'"); *United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 2022 WL 573663, *6 (S.D. Fla. 2022) ("The Court has reviewed the blog articles offered by Defendant in this case and concludes that they qualify as 'news media' under 31 U.S.C. § 3730(e)(4)(A)(iii)...").

Here again, there is no doubt the prong applies. The only allegations specific to Rosemary Beach are found in Paragraphs 20, 56, and 65 of the *Complaint*. The facts alleged in these paragraphs are <u>all</u> (not just "substantially") taken from the PRAC website, *e.g.*, the amount of the loan obtained by Rosemary Beach and its status as "a non-profit organization."

To those public disclosures, Riner adds only an allegation of wrongdoing – *i.e.*, his legal conclusions that Rosemary Beach was ineligible for PPP benefits and "knowingly" submitted a false claim. This Court is <u>not</u> obliged to accept those conclusions. Nor are they relevant to the public disclosure bar. The Eleventh Circuit has clarified that this prong is triggered by the public disclosure of the "transactions" irrespective of whether the disclosure indicates wrongdoing. *Osheroff*, 776 F.3d at 814; *United Staes ex rel. Lorona v. Infilaw Corporation*, 2019 WL 3778389, *13 (M.D. Fla. 2019) (a relator cannot "distinguish his pleadings from similar public disclosures merely because the disclosures do not contain any allegations of wrongdoing. . . allegations of wrongdoing are not required.").

**(C)    Riner Is Not An "Original Source" Of This Information.**

Under the third prong, Riner must plead and prove that he is an "original source" for the information alleged in the *Complaint*. 31 U.S.C. § 3730(e)(4)(B). That is, Riner must have "knowledge that is independent of and materially adds to

the publicly disclosed allegations or transaction. . ." *Id.* For this "exacting" inquiry, a Florida district court explained that conclusions are not enough:

> To establish original source status knowledge, a *qui tam* plaintiff must allege specific facts — as opposed to mere conclusions — showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof.

*United States ex rel. Brown v. BankUnited Trust 2005-1*, 235 F.Supp.3d 1343, 1355–56 (S.D. Fla. 2017) (quoting *United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999)).

Relatedly, Riner must be a "direct" source of information. "Secondhand information, speculation, background information, or collateral research do not satisfy a relator's burden of establishing the requisite knowledge." *Id.; see also Osheroff,* 776 F.3d at 815 ("background information that helps one understand or contextualize a public disclosure is **insufficient** to grant original source status") (Emphasis supplied).

To illustrate how this prong is applied, consider the Eleventh Circuit's *Fresenius* decision. The *Fresenius* relator was employed by the defendant, a provider of outpatient services that billed the Center of Medicaid and Medicare Services (**CMS**). The district court determined that although the relator's complaint was informed by prior public disclosures, he was nonetheless an original

source based on his knowledge of his employer's practices and his "discussions with supervisors and coworkers about overfill use and billing" *Id.* at 930.

Reversing, the Eleventh Circuit noted the relator "was not himself directly involved in billing." *Id.* at 931. The court held that second-hand information learned from fellow employees is <u>not</u> enough to qualify as an original source, explaining:

> We find the reasoning of our sister circuits persuasive when reading the statute. The phrase "direct and independent" is most naturally read as creating an extreme limit on secondhand knowledge that is sufficient to qualify as an "original source." Being told what another department is doing is almost necessarily not direct knowledge of that department's behavior. In this case, Saldivar was told that inventory spreadsheets were used for billing purposes. This is not direct knowledge of the alleged improper billing. Indeed, it is on its face indirect; he was told by another that his work product was used, and it appears he had no direct knowledge of how billing occurred or even how his inventory was factored into the billing.
>
> *            *            *            *
>
> While Saldivar had independent knowledge of the administration of overfill, his knowledge of the critical component—the alleged billing for drugs Fresenius received at no cost—was derived from secondhand sources. To the extent Saldivar's information is not secondhand, it appears to be more akin to *Osheroff*'s background information. . . Saldivar thus fails to meet an essential element of the original source requirement, that he have "*direct and independent knowledge* of the information on which the allegations are based."

*Id*. at 936-937. On this basis, the Eleventh Circuit remanded the lawsuit for dismissal.

In comparison to the _failed_ relator in _Fresenius_, Riner is even further removed from the information in his _Complaint_. He is a stranger to Rosemary Beach – there is no indication he has ever been to the property or knows anyone living in, or employed by, the community. Riner does not even have second-hand knowledge of Rosemary Beach (which would be insufficient under _Fresenius_); instead, Riner proffers legal conclusions from a distance. Thus, Riner cannot possibly be an "original source" for his allegation that Rosemary Beach "knowingly" submitted a false claim for PPP benefits. [DE 1 at ¶ 65]. Indeed, Riner's claim that he is "original source" for seventy-nine (79) defendants is a glaring indication that he lacks connection to Rosemary Beach.

Courts do not hesitate to dismiss FCA complaints based on the public disclosure bar. _See, e.g._, _Osheroff_ (11th Cir. 2015); _Fresenius_ (11th Cir 2016); _Odom_ (N.D. Fla. 2023); and _Zafirov_ (M.D. Fla. 2021). The same result should obtain here. Moreover, a dismissal _with_ prejudice is warranted because further pleading and discovery cannot avoid hard facts: Congress created a public website, published the key facts now in Riner's _Complaint_, and Riner has no connection to Rosemary Beach.

## II.     RINER DOES NOT ALLEGE THAT ROSEMARY BEACH HAD THE REQUIRED SCIENTER.

An FCA claim has four essential elements: "(1) a false statement or fraudulent course of conduct, (2) **made with scienter**, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1346–47 (11th Cir. 2021) (Emphasis supplied).

The focus here is the FCA scienter requirement. The Supreme Court recently explained that scienter requires proof that a person "(1) "has actual knowledge of the [falsity of the] information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023).

Here, Riner musters only the conclusory allegation that Rosemary Beach "knowingly" submitted a false claim. [DE 1 at ¶ 65; *see also* ¶¶ 49, 51 (general allegations)]. There is no elaboration; no facts are alleged in support. This bare allegation is not sufficient under *Twombly*, 127 S. Ct. 1955, 1964-65 ("entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Nor is this plausible. Congress enacted the PPP Program in haste in response to an economic emergency. SBA approved financial intermediaries encouraged

17

employers to take PPP loans. Notably, the extent to which the CARES Act expanded eligibility for SBA loans remains unclear even today, as the lawsuits cited in this Motion indicate. And Riner does <u>not</u> allege that Rosemary Beach used the PPP loan for a purpose other than what Congress intended. Instead, Riner merely alleges technical ineligibility and asserts that these unsophisticated parties, in 2020, should have interpreted the CARES Act as he does now. That is not plausible and does not establish scienter.

Consider a comparison. These defendants are not health care providers submitting false claims to CMS notwithstanding decades of regulatory guidance. These defendants are not sophisticated parties with ready access to lawyers and court decisions. Indeed, the PPP has no equivalent – the crisis and the Congressional response are *sui generis*. The notion that seventy-nine defendants, most of whom are governed by volunteer boards, "knowingly" decided to defraud the Government is not plausible. Given that context, Riner must be required to file a sufficient pleading. A one-word recitation of the element "knowingly" does not satisfy *Twombly* and its progeny.[17]

For this additional, independent reason, the failure to adequately allege scienter, Riner's FCA claims should be dismissed.

---

[17] Defendant appreciates that under Federal Rule of Civil Procedure 9(b) knowledge can be alleged generally. This element, however, is still subject to the pleading requirements of Rule 8, as applied by *Twombly* and progeny. Facts and plausibility are required.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Rosemary Beach Property Owners Association, Inc., moves to dismiss, with prejudice, the FCA claims against it in the *Complaint* and for such other relief this Court deems appropriate.


Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9234
Facsimile (561) 683-8977
Primary e-mail: barry.postman@csklegal.com
Secondary e-mail:
barry.postman@csklegal.com


By:   s/ Barry A. Postman
     BARRY A. POSTMAN
     Florida Bar No.: 991856
     DAVID C. BORUCKE
     Florida Bar No.: 039195
     *Counsel for Defendant Rosemary*
     *Beach*

## Local Rule 7.1(F) Certificate

The foregoing motion and memorandum contain 4,364 words, in compliance with Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   /s/ *David C. Borucke*
      *Attorney for Defendant Rosemary Beach*
      *Property Owners Association, Inc*.

**SERVICE LIST**

**Plaintiff Wade Riner**
Randal C. Owens
Michael Adams-Hurta
Wright Close & Barger, LLP
One Riverway
Suite 2200
Houston, Texas 77056
owens@wrightclosebarger.com
hurta@wrightclosebarger.com

**United States**
Mary Ann Lane Couch
DOJ-USAO
21 E. Garden Street
Suite 400
Pensacola FL 32502
mary.ann.couch@usdoj.gov

Marie Armstrong Moyle
DOJ-USAO
111 N. Adams Street
4th Floor
Tallahassee, FL 32301
marie.moyle@usdoj.cov

**Dunes of Panama Management Association**
Jack Gregg Williams
502 Harmon Avenue
Panama City, FL 32401
850-763-5368
Email: williamspclaw@gmail.com

Stephen Ellis Syfrett
Syfrett & Garmon PA – Panama City, FL
502 Harmon Avenue
Panama City, FL 32401
850-692-9612
Email: syfrettlaw@gmail.com

**Holiday Surf And Racquet Club Condo. Ass'n, Inc.**
**Pinnacle Port Community Ass'n, Inc.**
George Spears Reynolds
Carr Allison - Tallahassee FL
305 S Gadsden St
Tallahassee, FL 32301
850-222-2107
Email: greynolds@carrallison.com

Paul David Brannon
Carr Allison - Tallahassee FL
305 S Gadsden St
Tallahassee, FL 32301
850-222-2107
Fax: 850-222-8475
Email: dbrannon@carrallison.com

**Seacrest Beach II Owners Ass'n, Inc.**
Kayla Michelle Scarpone
Dunlap & Shipman Pa - Tallahassee FL
2065 Thomasville Rd Ste 102
Tallahassee, FL 32308
850-385-5000
Fax: 850-385-7636
Email: kayla@dunlapshipman.com