UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO. 3:22-CV-11072-TKW/HTC

UNITED STATES OF AMERICA,
*ex rel.* WADE RINER,

          Plaintiff,

v.

WATERCOLOR COMMUNITY
ASSOCIATION, INC., *et al.*,

          Defendant.

_____/

## LAKETOWN WHARF RESORT COMMUNITY ASSOCIATION, INC.'S MOTION TO DISMISS THE RELATOR'S COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

Defendant, LAKETOWN WHARF RESORT COMMUNITY ASSOCIATION, INC. ("Laketown Wharf"), pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, hereby files this Motion to Dismiss the Relator, WADE RINER's (the "Relator") Complaint [D.E. 1] (the "Complaint") with Incorporated Memorandum of Law and, in support thereof, states as follows:

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this action, a serial relator who resides in Texas attempts to assert claims under the False Claims Act (the "FCA") against 11 separate and unrelated Florida condominium or homeowners associations. The Relator's claims are supposedly premised on the named defendants Paycheck Protection Program ("PPP") loan

applications and their receipt of PPP loan funds.  Unlike most cases where fraud is alleged in the PPP loan context, however, the Relator does not that allege any of the named defendants are non-existent or "fake" entities without any employees.  The Relator also does not allege that any PPP loan funds were improperly used to purchase luxury items or for any other purpose that contravenes Congress's intention.

The Relator's FCA claims, instead, hinge on a manufactured theory of liability that the Relator posits applies universally and irrespective of whether PPP loan funds were used for the purpose Congress intended – namely, saving jobs that would otherwise be lost due to the COVID-19 Pandemic.  Specifically, despite the lack of explicit statutory or regulatory exclusion, the Relator broadly claims that all homeowners, condominium, and other associations were purportedly ineligible for PPP loans.

The Relator's Complaint, however, is flawed from both a pleading and substantive standpoint for a variety of reasons; and dismissal is warranted.

First, as courts have widely recognized, an FCA complaint is subject to the heightened pleading standard of Rule 9(b) and must "state with particularity the circumstances constituting fraud."  *United States v. Choudhry*, 8:13-CV-2603-T-27AEP, 2016 WL 7228760, at *2 (M.D. Fla. Oct. 11, 2016).  To plead the submission of a false claim with particularity, "a relator must identify the particular

document and statement alleged to be false, **who** made or used it, **when** the statement was made, how the statement was false, and what the defendants obtained as a result." *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012) (emphasis added).  Among other things, the Complaint fails to allege any ultimate facts identifying who from Laketown purportedly made a false statement and when the supposedly false statement was made.  As a result, the Complaint fails to state a cause of action under the FCA and should be dismissed.

Second, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act") required PPP loan recipients to "make a good faith certification . . . that the uncertainty of current economic conditions ma[d]e[ ] necessary the loan request to support the[ir] ongoing operations . . .." 15 U.S.C. § 636(a)(36)(G). Seizing on this statutory mandate and the Relator's assumptions about Florida condominium and homeowners associations in general, the Complaint flatly alleges Laketown Wharf purportedly "falsely certified that '[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." D.E. 1 at ¶ 62.

But even putting aside the lack of factual support for the Relator's sweeping assumptions, the Complaint overlooks the Small Business Administration's (the "SBA") guidance that is fatal to the Relator's claims premised on Laketown Wharf's alleged economic uncertainty certification.  This guidance —codified in an interim

final rule— states any borrower "that received PPP loans with an original principal amount of *less than $2 million* will be *deemed* to have made the required *certification* concerning the necessity of the loan request *in good faith*."  Because the Complaint alleges Laketown Wharf's principal PPP loan amount was less than $2 million, its economic uncertainty certification was necessarily made in good faith; and therefore could not be false, per the SBA's interim final rule.

Third, as the lack of specificity in the Complaint's allegations accentuate, the Relator's allegations are substantially the same as information that was previously disclosed through federal reports and news media websites.  The Complaint's factually bareboned and conclusory allegations, likewise, underscore that the Relator is not an "original source" of such publicly disclosed information.  For this separate and additional reason, the Complaint should be dismissed pursuant to the FCA's public disclosure bar.

Lastly, the Counts I and II of the Complaint incorporate by reference "each and every allegation contained in all paragraphs of th[e] Complaint." D.E. 1 . at ¶¶ 84, 90.  Thus, the Complaint is properly characterized as an improper shotgun pleading and is also subject to dismissal on that basis.

## **BACKGROUND**

1.  On or around August 10, 2022, the Relator filed the Complaint against 11 separate and unrelated defendants, all of which are allegedly either

homeowners, condominium, or other associations serving communities in Florida.

2. The Complaint attempts to assert 2 separate, but factually identical, claims under the FCA against Laketown Wharf and the other named defendants based on a purported violation of 31 U.S.C § 3729(A)(1)(a). *See* D.E. 1 at 25, 26.

3. In an attempt to support those claims, the Complaint alleges that an unnamed "corporation with which [the Relator] is the officer and principle [] owns multiple homes in Florida." *Id.* at ¶ 10.

4. Through his indirect "ownership" of those homes, the Complaint avers, the Relator "is a member of the Hunters Run Property Owners Association, Inc., and he was a member of the Boca West Master Association, Inc. until the fourth quarter of 2021." *Id.*

5. As alleged in the Complaint, "through [the Relator's supposed] membership in these homeowners associations in Florida, he learned that *his homeowners associations* had applied for millions of dollars of federal relief through PPP loans, even though they were [purportedly] not  business interests that qualified for such loans under the CARES Act." *Id.* (emphasis added).

6. From there, the Complaint leaps to a vague allegation claiming the Relator "subsequently learned" that "numerous other" homeowner associations aside

from his own purportedly "defrauded the United States government by falsely certifying that they were eligible for PPP loans . . .." *Id.*

7.  Along similar lines, even though the Complaint does not allege the Relator had any direct involvement with the so called "numerous other" associations, the Complaint claims the Relator is "intimately familiar with the finances and organization of these particular homeowners associations." *Id.*

8.  Despite the Relator's professed intimate familiarity with the "numerous other" associations, however, the Complaint asserts a grand total of just 3 factual allegations regarding Laketown Wharf. *See generally id.*

9.  First, the Complaint alleges the readily available public information that Laketown Wharf "is a not-for-profit community association located at 9902 Thomas Dr., Panama City, FL."[1] *Id.* at ¶ 17.

10. Second, the Complaint regurgitates widely disseminated public information concerning a PPP loan Laketown Wharf received into a chart, as follows:

| Defendant | # of Loans Rec'd | Loan(s) Amount | Date Loan(s) Approved | Loan Forgiven? | Amount of Loan Forgiven |
|---|---|---|---|---|---|
| Laketown Wharf Resort Community Association, Inc. | 1 | $190,692 | 04/16/2020 | Yes | $192,991 |

---

[1] Laketown Wharf's status as a not-for-profit corporation and its address is publicly available on the Florida Department of State, Division of Corporations' website (https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=LAKETOWNWHARFRESORTCOMMUNITYAS%20N070000038150&aggregateId=domnp-n07000003815-1550e210-dc2e-4eb5-b4bd-83ebb85e7fad&searchTerm=laketown%20wharf%20resort&listNameOrder=LAKETOWNWHARFRESORTCOMMUNITYAS%20N070000038150), as well as other publicly available websites (https://opencorporates.com/companies/us_fl/N07000003815).

*Id.* at ¶ 56.

11.   Lastly, the Complaint intersperses the very same public information with factually bareboned legal conclusions, as follows:

> 62.   Laketown Wharf applied for and received a PPP loan of $190,692, approved on April 16, 2020. In Laketown Wharf's application, Laketown Wharf knowingly and falsely certified that it was "eligible to receive a loan under the rules in effect at the time th[e] application is submitted." It also falsely certified that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Laketown Wharf already applied for forgiveness for its loan, and the United States forgave the loan in the amount of $192,991 (including interest).

*Id.* at ¶ 66.

12.   On or about October 4, 2023, the United States Government declined to intervene in this action.  *See* D.E. 11.

## <u>MEMORANDUM OF LAW</u>

## I.   STANDARD FOR GRANTING A RULE 12(B) MOTION TO DISMISS.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *United States v. Odom*, 3:20CV3678-MCR-ZCB, 2023 WL 5203000, at *5 (N.D. Fla. June 22, 2023).   In considering a Rule 12(b)(6) motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.  *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005).   While a court must

accept well-pled facts as true, it need not assume the truth of conclusory allegations, nor are plaintiffs entitled to have the court view unwarranted deductions of fact or argumentative inferences in their favor.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Ultimately, the "complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility is found where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Mere legal conclusions lacking "adequate factual support" are not entitled to an assumption of truth. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Twombly*, 550 U.S. at 555 (noting "a formulaic recitation of the elements of a cause of action will not do").

## **ARGUMENT**

**I.     THE COMPLAINT FAILS TO ALLEGE ANY PURPORTED FRAUD WITH SUFFICIENT PARTICULARITY AND SHOULD BE SUMMARILY DISMISSED.**

"In addition to the ordinary pleading rules, an FCA claim is based on fraud and therefore is subject to the heightened pleading standard of Rule 9(b)."  *United States v. Odom*, 3:20CV3678-MCR-ZCB, 2023 WL 5203000, at *5 (N.D. Fla. June

22, 2023).   Rule 9(b) of the Federal Rules of Civil Procedure requires a party to "state with particularity the circumstances constituting fraud or mistake."  *Id.*; *see also Urquilla–Diaz*, 780 F.3d at 1052.   To satisfy Rule 9(b), the complaint must allege: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) ***the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same***, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (emphasis added); *see also Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567 (11th Cir. 1994) (requiring FCA pleading to include facts as to time, place, and substance of the alleged fraud).

In short, a relator must "allege the '***who***,' 'what,' 'where,' '***when***,' and '***how***' of fraudulent submissions to the [G]overnment."  *United States v. Landmark Hosp. of Athens, LLC*, 3:21-CV-00036-CAR, 2023 WL 3097948, at *9 (M.D. Ga. Apr. 26, 2023) (emphasis added).   Notably, failing to meet Rule 9(b)'s pleading standards is grounds for dismissal under Rule 12(b)(6).  *See Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

In the instant case, the Complaint fails to satisfy the heightened pleading standards applicable under Rule 9(b) for several reasons; and should be dismissed.

First, in terms of the "who," the Complaint merely alleges that "Laketown Wharf applied for and received a PPP loan of $190,692, approved on April 29, 2020." D.E. 1 at ¶ 62. In other words, the Complaint fails to identify who submitted any purportedly fraudulent PPP loan application on Laketown Wharf's behalf. *Id.* In the place of this essential allegation, the Complaint asserts the following legal conclusion for all 11 named defendants indiscriminately: "[a]ny and all acts alleged herein to have been committed by Defendants were committed by officers, directors, employees, or agents who at all times acted on behalf of the named Defendants and within the course and scope of their employment or agency." *Id.* at ¶ 23. Courts, however, are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986).

Second, according to the Complaint, Laketown Wharf purportedly "knowingly and falsely certified within its application that 'it was eligible to receive a loan under the *rules in effect at the time the application is submitted*.'" *Id.* (emphasis added). Additionally, the Complaint claims that Laketown Wharf purportedly "also falsely certified that '*current* economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.'" *Id.* (emphasis added).

But, despite the Complaint's references to definite points in time, the Complaint is devoid of any allegation specifying when Laketown Wharf submitted

a PPP loan application.  *See generally* D.E. 1.  The Complaint, likewise, fails to plead the date Laketown Wharf applied for PPP loan forgiveness.  *Id.*  The Complaint also fails to allege to whom Laketown Wharf purportedly submitted any supposedly fraudulent PPP loan applications or applications for PPP loan forgiveness.  *Id.*

Without these critical allegations, the Complaint fails to satisfy Rule 9(b)'s heightened pleading standard.  *United States v. Landmark Hosp. of Athens, LLC*, 3:21-CV-00036-CAR, 2023 WL 3097948, at *10 (M.D. Ga. Apr. 26, 2023) (holding operative complaint failed to state a claim under the FCA where the pleading "contained no information concerning *who* at [the defendant] or any other medical facility submitted any requests for payment to the Government; *when* or *to whom* those requests were made; . . . what documentation was presented in support of those claims; or whether the Government rendered payment for those services.") (emphasis added).

The Complaint, therefore, doesn't pass muster under Rule 9(b) and should be dismissed.

## II.   THE RELATOR'S FCA CLAIMS BASED ON LAKETOWN WHARF'S ECONOMIC UNCERTAINTY CERTIFICATION ARE LEGALLY UNTENABLE AND SHOULD BE DISMISSED.

The FCA does not define the term "false."  *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1299 (11th Cir. 2021).  Case law, however, has

identified various types of false claims and statements.  *Id.*  For example, a claim may be considered false when a person or entity fails to comply with statutory, regulatory, or contractual requirements but certifies that it has complied with them. *See Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 186–88 (2016).

As alleged in the Complaint, Laketown Wharf received a $190,692 PPP loan. D.E. 1 at ¶ 62.  Further, according to the Complaint, Laketown Wharf's PPP loan application purportedly "falsely certified that '[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."  *Id.* Notably, however, the SBA specifically created a safe harbor provision concerning applicants economic uncertainty certifications.   *See* Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act, 86 FR 3692-01, 3706 & n.87.  As codified, this SBA rule reads as follows:

### 13. **Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan Request**

The CARES Act requires each applicant applying for a PPP loan to certify in good faith "that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing obligations" of the applicant. SBA, in consultation with the Department of the Treasury, issued additional guidance on May 13, 2020 concerning how SBA will review the required good-faith certification. See FAQ 46 (posted May 13, 2020). *This guidance included a safe harbor providing that any PPP borrower, together with its affiliates, that received PPP loans with an original principal amount of less than $2 million will be*

> *deemed to have made the required certification concerning the*
> *necessity of the loan request in good faith.*

*Id.* at 3706 (emphasis added).

Faced with a similar claim premised on a supposedly false economic uncertainty certification, at least one court has deemed the SBA's rule quoted above as "***conclusive*** on [a d]efendant's potential liability for its economic uncertainty certifications." *United States of Am. ex rel. Matthew Miller, Donald K. Bake, & Saad Khan, Plaintiff/Relators, v. ManPow, LLC, Defendant.*, 221CV05418VAPADSX, 2024 WL 305699, at *9 (C.D. Cal. Jan. 3, 2024) (emphasis added). In the *ManPow* case, the relators attempted to assert claims against the defendant under the FCA stemming from the defendant's PPP loan applications. *Id.* at 1. The relators alleged, in pertinent part, the defendant "falsely certified that . . . economic uncertainty made the two loans it requested necessary to support its ongoing operations." *Id.* In granting judgment in the defendant's favor as a matter of law, the *ManPow* court held "[t]he SBA effectively ***absolved*** borrowers with principal loan amounts of ***less than $2 million*** of this requirement via its rulemaking process by later 'deem[ing] [them] to have made the required certification . . . in good faith.'" *Id.* at 9.

Here, the Complaint avers that Laketown Wharf's principal PPP loan amount was $190,692—well below $2 million. For this reason alone, Laketown Wharf's alleged economic uncertainty certification was necessarily made in good faith and,

per the SBA's rules, could not be false.  Therefore, to the extent that the Relator's

FCA claims are based on Laketown Wharf's alleged economic uncertainty

certification, those claims should be summarily dismissed.

## III.   THE COMPLAINT SHOULD BE DISMISSED UNDER THE FCA'S PUBLIC DISCLOSURE BAR.

"The purpose of the FCA is to encourage private citizens who are aware of

fraud against the government to expose the fraud, while preventing opportunistic

suits by individuals who hear of fraud publicly but play no part in exposing it."

*United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222

(11th Cir. 2012).  Consistent with this overarching purpose, the FCA requires a court

to dismiss an action or claim if substantially the same allegations were publicly

disclosed prior to the initiation of the *qui tam* action.  *See* § 3730(e)(4)(A).  An

exception exists if the relator is an original source of the information.  *See id.*

Courts employ the following three-prong test to decide whether the public

disclosure bar applies: "(1) before the filing of the qui tam complaint, had there been

any public disclosures alleging fraud or from which fraud might be inferred? (2) If

so, are the allegations in the complaint substantially the same as allegations or

transactions described in the public disclosure? (3) If yes, is the complaint

nonetheless allowed because the relator is an original source of the information?"

*See United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 812 (11th Cir.

2015).  "A relator bears the burden of proving that the public disclosure bar does not

preclude his FCA action." *United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 640 (4th Cir. 2016). Further, the Eleventh Circuit continues to recognize that § 3730(e)(4) "creates grounds for dismissal for failure to state a claim . . . [and] it instructs courts to dismiss an action when the public disclosure provision applies." *Osheroff*, 776 F.3d at 810.

The first prong of the test looks at whether information has been disclosed in a federal court proceeding; "a congressional, Government Accountability Office, or other **federal report**, hearing, audit, or investigation"; or **the news media**. 31 U.S.C. § 3730(e)(4)(A) (emphasis added); *Osheroff*, 776 F.3d at 812. As the U.S. Supreme Court has explained, the "sources of public disclosure in § 3730(e)(4)(A) . . . suggest that the public disclosure bar provides a broa[d] sweep." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011).

Along those lines, the Eleventh Circuit has held that such sources of public disclosure include information found on publicly available websites. *Osheroff*, 776 F.3d at 813; *see also see also United States ex rel. Brown v. Walt Disney World Co.*, No. 6:06–cv–1943, 2008 WL 2561975, at *13 (M.D. Fla. June 24, 2008) (finding Wikipedia pages constitute "news media"); *United States ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 20-20543-CIV, 2022 WL 573663, at *6 (S.D. Fla. Feb. 25, 2022) (holding "publicly available online blogs" constitute "news media). Additionally, a federal agency's response to a Freedom of Information Act ("FOIA")

request for records qualifies as a "report" within the meaning of the FCA's public disclosure bar. *U.S. ex rel. Lewis v. Walker*, 438 Fed. Appx. 885, 887–88 (11th Cir. 2011).

Here, the information concerning Laketown Wharf's PPP loans alleged in the Complaint is publicly available both through federal reports and news media websites. For starters, in response to FOIA requests and a lawsuit brought against the SBA by 11 news organizations, the SBA "***publicly produced*** the ***full dataset*** containing the names, addresses, and precise loan amounts for millions of recipients of PPP . . . loans totaling hundreds of billions of dollars." *WP Co. LLC v. U.S. Small Bus. Admin.*, 514 F. Supp. 3d 267, 270 (D.D.C. 2021).[2]

Additionally, within the CARES Act, Congress established the Pandemic Response Accountability Committee (the "PRAC"). The PRAC's publicly available website provides a host of information regarding PPP loan recipients, including PPP loan amounts, the date PPP loans were approved, and the PPP loan amounts forgiven.[3] Various news organizations, including Treasure Coast Newspapers,[4] Florida Today,[5] CNN,[6] and Pro Publica,[7] also republished PPP loan information on

---

[2] https://data.sba.gov/dataset/ppp-foia.
[3] https://www.pandemicoversight.gov/data-interactive-tools/interactive-dashboards/paycheck-protection-program.
[4] https://data.tcpalm.com/paycheck-protection-program-loans/.
[5] https://data.floridatoday.com/paycheck-protection-program-loans/.
[6] https://www.cnn.com/projects/ppp-business-loans/states/fl.
[7] https://projects.propublica.org/coronavirus/bailouts.

their publicly available websites.  Given the widespread public disclosure of the information set forth in the Complaint, the first prong of the public disclosure bar test is easily satisfied.[8]

The second prong of the public disclosure bar test considers whether the Relator's allegations are "substantially the same" as the public disclosures.  *Osheroff*, 776 F.3d at 814.  This prong is satisfied if the Relator bases his claim "in any part on . . . publicly disclosed information."  *Id.*  Further, this prong does not require a "complete identity" of allegations; rather, "[t]he key inquiry is whether the disclosures could have put the government on notice of the fraud alleged in the *qui tam* complaint."  *United States ex rel. Zafirov v. Florida Med. Associates LLC*, 8:19-CV-1236-KKM-SPF, 2021 WL 4443119, at *7 (M.D. Fla. Sept. 28, 2021).  As a result, the Eleventh Circuit describes the second prong of the public disclosure test as a "quick trigger" to reach the more exacting original source inquiry.  *See Osheroff*, 776 F.3d at 814.

---

[8] For purposes of the public disclosure bar analysis, a district court may consider extrinsic documents that are judicially noticed.  *See Osheroff.*, 776 F.3d at 811; *see also questioned");  United States ex rel. Bernier v. InfiLaw Corp.*, 311 F. Supp. 3d 1288, 1291 (M.D. Fla. 2018) (Bernier I) (noting, in FCA cases, "courts may take judicial notice of documents such as newspaper articles and information on publicly available websites").  As a result, Laketown Wharf will be filing a Request for Judicial Notice of the publicly available documents referenced herein that form the basis of the Relator's allegations.

Notably, the Complaint's only allegations specific to Laketown Wharf are asserted within Paragraphs 17, 56, and 62. In substance, those allegations merely allege the amount of Laketown Wharf's PPP loan, the date it was approved, and the PPP loan amount forgiven. *See* D.E. 1 at ¶¶ 17, 56, and 62. Aside from the Relator's factually unadorned allegations of wrongdoing, the Complaint's allegations regarding Laketown Wharf are indisputably "substantially the same" as the public disclosures described above. Indeed, just like the public disclosures, the Complaint alleges the amount of Laketown Wharf's PPP loan, the date its PPP loan was approved, and the amount of Laketown Wharf's PPP loan that was forgiven. The second prong of the public disclosure test, therefore, is also satisfied in the instant case.

Lastly, under the third prong of the public disclosure test, the court may nonetheless allow a complaint that is substantially similar to a prior public disclosure to proceed if the relator is an "original source" of the allegations. *Osheroff*, 776 F.3d at 814–15. According to the FCA, an "original source" means a person who: (1) prior to the relevant public disclosure, voluntarily disclosed to the government the information on which his allegations are based, or (2) has independent knowledge of and "materially adds" to the publicly disclosed allegations and voluntarily provided that information to the government before filing his FCA action. § 3730(e)(4)(B). Information fails to "materially add[ ]" to the publicly disclosed

allegations if the prior disclosures were already sufficient to give rise to an inference regarding the current fraud allegations. *Osheroff*, 776 F.3d at 815.

Additionally, "[b]ackground information that helps one understand or contextualize a public disclosure is insufficient to grant original source status." *Osheroff*, 776 F.3d at 815; *see also United States ex rel. Saldivar v. Fresenius Med. Care Holdings*, 841 F.3d 927, 936 (11th Cir. 2016) ("The phrase 'direct and independent' is most naturally read as creating an extreme limit on secondhand knowledge that is sufficient to qualify as an 'original source.'"). Knowledge based on research into or review of public records or materials, or some combination thereof, such as the research and review that Relator has apparently engaged in to bring his purported FCA claims, also does not suffice. *United States ex rel. Brown v. BankUnited Tr. 2005-1,* 235 F. Supp. 3d 1343, 1359 (S.D. Fla. 2017); *see also United States ex rel. Lewis v. Walker*, 438 Fed. App'x 885, 888 (11th Cir. 2011) (holding relator was not original source where compilation of information relator used to reconstruct grant application was publicly available to anyone).

Rather, to avoid the public disclosure bar, a relator "must allege specific facts—as opposed to mere conclusions—showing exactly how and when [he] obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." *United States ex rel. Sedona Partners LLC v. Able Moving & Storage, Inc.*, 20-23242-CIV, 2021 WL

6932167, at *8 (S.D. Fla. Dec. 16, 2021), *report and recommendation adopted,* 20-CV-23242, 2022 WL 178225 (S.D. Fla. Jan. 20, 2022).  In stark contrast, here, the Complaint flatly concludes that the "Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions . . .."  D.E. 1 at ¶ 25.

At bottom, because the Complaint fails to allege any ultimate facts showing the Relator is an "original source," the Complaint should be dismissed under the FCA's public disclosure bar.

## IV.      THE COMPLAINT IS A SHOTGUN PLEADING AND SHOULD BE SUMMARILY DISMISSED.

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018).  The Eleventh Circuit, therefore, has "repeatedly held that a District Court retains authority to dismiss a shotgun pleading on that basis alone." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018).  As the Eleventh Circuit has explained, "[a] typical shotgun pleading 'contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.'" *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

Within Counts I and II of the Complaint, the Relator attempts to allege claims against the 11 named defendants, including Laketown Wharf, under 31 U.S.C. § 3729 (a)(1)(A).  *See* D.E. 1 at 25, 26.  In support of both claims, the "Relator alleges and incorporates by reference ***each and every allegation contained in all paragraphs*** of th[e] Complaint."  *Id.* at ¶¶ 84, 90 (emphasis added).  Since Counts I and II of the Complaint "incorporate[] by reference each and every allegation contained in all paragraphs of the Complaint," the Complaint is a quintessential shotgun pleading and should be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, Defendant, LAKETOWN WHARF RESORT COMMUNITY ASSOCIATION, INC., respectfully requests that this Honorable Court enter an Order granting this Motion and dismissing the Complaint [D.E. 1], as well as any other and any other relief deemed just and proper.

## LOCAL RULE 7.1(F) CERTIFICATE

The undersigned certifies that the foregoing Motion and Memorandum contains 4,682 words, in compliance with Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

HEREBY CERTIFY that I electronically filed the foregoing on this 29th day of February 2024, with the Clerk of the Court using the CM/ECF system which will automatically send a notice of electronic filing to all counsel of record.

Respectfully submitted,

**KAUFMAN DOLOWICH, LLP**

By: *_/s/Joseph M. Cobo_____*
    Joseph M. Cobo, Esq.
    FBN: 114204
    Email: jcobo@kdvlaw.com
    One Financial Plaza
    100 S.E. 3rd Ave., Suite 1500
    Fort Lauderdale, FL 33394
    Tel. (954) 302-2360
    Fax: (888) 464-7982
    *Counsel for Defendant, Laketown Wharf*
    *Resort Community Association, Inc.*